LAWRENCE G. BROWN
United States Attorney
E. ROBERT WRIGHT (SBN 51861)
Assistant United States Attorney
United States Courthouse
501 "I" Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Of Counsel:

JEFF MOULTON
Regional Attorney
RACHEL A. BIRKEY
Attorney
Office of the General Counsel
United States Department of Agriculture
33 New Montgomery Street, 17th Floor
San Francisco, California 94105
Telephone: (415) 744-3011
Facsimile: (415) 744-3170

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. |
| ) | |
|             Plaintiff, ) | **COMPLAINT** |
| ) | |
|    v. ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| PACIFIC GAS AND ELECTRIC ) | |
| COMPANY, DAVEY TREE SURGERY ) | |
| COMPANY, and THE DAVEY TREE ) | |
| EXPERT COMPANY, ) | |
| ) | |
|            Defendants. ) | |

Plaintiff United States of America ("United States"), by and
through its undersigned counsel, alleges as follows:

///

///

///

## JURISDICTION AND VENUE

2      1.    This civil action arises under federal and California

3  law, including federal and California common law, California

4  Health and Safety Code §§ 13001, 13007 - 13009.1; California

5  Public Resources Code §§ 4293, 4421, and 4435; California Civil

6  Code §§ 1714, 3287, 3288, 3333, and 3346; California Public

7  Utilities Code §§ 451 and 2106; California Public Utilities

8  Commission General Order 95, Rules 12.2, 31.1, 35, 44.1, and

9  44.2; Title 14 California Code of Regulations § 1256; Title 36

10 Code of Federal Regulations §§ 261.5 and 261.10; Title 29 Code of

11 Federal Regulations § 1910.266(h); and 31 U.S.C. §§ 3711 and

12 3717, for monetary damages incurred by the United States in

13 connection with the "Fred's Fire," which ignited on or about

14 October 13, 2004, on National Forest System lands on the Eldorado

15 National Forest, El Dorado County, California.  The Forest

16 Service named this fire the "Fred's Fire" based on its proximity

17 to a former way station on Highway 50.

18     2.    This Court has jurisdiction over this action pursuant

19 to 28 U.S.C. § 1345.

20     3.    Venue is proper in the Eastern District of California

21 pursuant to 28 U.S.C. § 1391(b), because the acts, omissions, and

22 violations alleged herein occurred in El Dorado County, which is

23 within the Eastern District of California.

24 ///

25 ///

26 ///

27 ///

28 ///

4.   Plaintiff United States, as sovereign, owns National Forest System lands in El Dorado County that are under the supervision, control, administration, and protection of the United States Department of Agriculture, Forest Service ("Forest Service"), an agency and instrumentality of the United States.

5.   Defendant Pacific Gas and Electric Company ("PG&E") is, and was at all times herein mentioned, a corporation doing business in the County of El Dorado, State of California.  The Fred's Fire started on or adjacent to an easement granted to PG&E for right-of-way for the construction, operation, and maintenance of a transmission line ("easement") on National Forest System lands in El Dorado County.

6.   Defendants Davey Tree Surgery Company and The Davey Tree Expert Company (collectively "Davey Tree") are, and were at all times herein mentioned, Ohio corporations, registered as foreign corporations in the State of California, doing business in the County of El Dorado, State of California.

GENERAL ALLEGATIONS

7.   At all pertinent times, Davey Tree and its employees were performing removal and trimming of designated hazard vegetation as tree trimming contractor for PG&E.

8.   At all pertinent times, each defendant was the agent, employee, or partner of each of the other Defendants, and was at all times acting within the purpose and the scope of such employment, agency or partnership or at the direction of the other Defendant.  At all times material to this action, Davey Tree employees acted within the course and scope of their

1  employment and were the agents, employees, and servants of Davey
2  Tree and PG&E.

3      9.   Defendant PG&E had nondelegable statutory and
4  regulatory duties to properly inspect and maintain the areas
5  through which its power lines passed to make sure they were safe
6  and clear from dangerous conditions.  Specific nondelegable
7  duties of PG&E are set forth in Public Resource Code § 4293 and
8  regulations promulgated thereunder.  Such duties included the
9  requirement to remove "hazard" trees which may contact the power
10 lines from the side or may fall on the power lines, and the
11 requirement to maintain at least four feet of clearance between
12 the power lines and surrounding vegetation.

13     10.  The risk of fire from felling a tree in close proximity
14 to energized power lines during the dry period when fire is
15 likely to ignite and spread is a "peculiar" or "special" risk,
16 and is inherently dangerous.  PG&E had an obligation to ensure
17 that the tree removal work was properly and safely done.

18     11.  On or about October 13, 2004, between about 4:00 p.m.
19 and 5:00 p.m., the Fred's Fire ignited on National Forest System
20 lands near Kyburz, California adjacent to or under a PG&E 21,000
21 volt (21 kV) power transmission line ("power lines"), on or near
22 the easement, within the Eldorado National Forest.

23     12.  The Fred's Fire ignited during a late afternoon
24 removal, by Davey Tree, of trees identified by PG&E or its
25 representatives as "hazard" trees located near the power lines.

26     13.  The subject tree had previously been identified by PG&E
27 or its representatives as being a "hazard" tree, meaning it may
28 contact the line from the side or may fall on the line.  PG&E was

required by law, including Public Resources Code § 4293, to remove the "hazard" tree so as to remove such hazard.

14. The National Weather Service determined October 13, 2004, to be a "Red Flag" warning day, meaning that the temperature, wind, and relative humidity posed an exceptionally high threat of new fires. Between about 4:00 p.m. and 5:00 p.m. that day, Davey Tree negligently cut and felled a large diameter, about 40 inch, tree ("the tree") so that it fell on the power lines. That act brought a power line or lines down into contact with the ground and vegetation, thereby igniting the Fred's Fire.

15. The tree was located on a slope, was much taller than the power lines, and located within about ten yards from the power lines. Defendants negligently failed to maintain at least four feet of clearance between the tree and the power lines and negligently failed to fell the tree so as to properly remove the hazard. Davey Tree negligently determined that the tree would fall away from or alongside the power lines, but instead it fell down slope in the direction of and onto the power lines.

16. Davey Tree negligently failed to rope the tree, and also negligently failed to leave "holding wood," also called "hinge wood," so that Davey Tree was unable to control the direction of the fall of the tree.

17. Davey Tree negligently failed to be equipped to fight an accidental fire that might start as a result of their work. Davey Tree negligently failed to search the area of the downed power lines for possible fire. After about ten minutes the Davey Tree employees observed smoke and/or flame in the vicinity of the downed power lines. Davey Tree took no steps to fight the fire.

1      18.   PG&E negligently hired and negligently retained Davey

2   Tree to remove the hazard tree.  PG&E negligently supervised,

3   inspected, and exercised control over the tree removal activities

4   of Davey Tree.  PG&E and Davey Tree acted in concert in the

5   negligent performance of their respective duties and obligations

6   by igniting the Fred's Fire and allowing it to spread.

7      19.   PG&E is vicariously liable for the negligent acts and

8   omissions of Davey Tree in felling the hazard tree so as to cause

9   the Fred's Fire.  PG&E negligently allowed tree removal to take

10  place on a "Red Flag" warning day and negligently failed to de-

11  energize the power lines.

12     20.   The energized, downed PG&E power lines are a "device

13  which may kindle a fire" within the meaning of California Public

14  Resources Code § 4435.

15     21.   Pursuant to California Public Resources Code § 4435,

16  Defendants' ignition of the Fred's Fire is prima facie evidence

17  of their negligence in the maintenance, operation, or use of the

18  power lines.

19     22.   The ignition of the Fred's Fire was an incident of a

20  kind that ordinarily does not occur in the absence of someone's

21  negligence; it was caused by activity within the exclusive

22  control of Defendants; and it was not due to any act on the part

23  of Plaintiff.  Therefore, res ipsa loquitur applies in this case.

24     23.   The fire spread to over 7,500 acres, damaging over

25  4,500 acres of National Forest System lands, before it could be

26  suppressed.

27  ///

28  ///

1    24.  After learning of the Fred's Fire ignited by

2  Defendants, the Forest Service suppressed the fire at great cost

3  to Plaintiff.  The damages to the United States include, but are

4  not limited to: the costs of fire suppression; the cost and

5  future costs of mitigation, rehabilitation, and reforestation of

6  the burned areas; and loss of timber, habitat, wildlife,

7  watershed and earth protection, scenic and environmental values,

8  facilities, and structures.  The amount of these damages will be

9  proved at trial.

10    25.  The United States has made demands on Defendants for

11  payment of the costs and damages incurred by the United States

12  due to the Fred's Fire.  None of the Defendants have paid any

13  part of the sum demanded by the United States.

14                  <u>PG&E EASEMENT FOR RIGHT-OF-WAY</u>

15    26.  On or about October 16, 1959, the United States,

16  through the Forest Service, and PG&E entered into a 50-year

17  easement for right-of-way for a transmission line on National

18  Forest lands.  A true and correct copy of the easement, not

19  including amendments or other exhibits, is annexed hereto as

20  Exhibit 1.

21    27.  At all times material to this action, the easement was

22  and is a valid contractual agreement between the United States

23  and PG&E.  At all times material to this action, the power lines

24  that were downed to cause the Fred's Fire were operated and

25  maintained by PG&E pursuant to the easement.

26  ///

27  ///

28  ///

28.  At all times material to this action, the easement and its terms and conditions were and are authorized and required by law, including 43 U.S.C. §§ 1761 and 1765 and Title 36 Code of Federal Regulations §§ 251.53 and 251.56.

29.  Under the easement, PG&E is required to prevent and suppress fires on or near lands occupied under the easement and is liable to the United States for all suppression costs and damages resulting from fires caused by maintenance of the power lines.  The easement provides at Article 17, page 4:

> The Grantee shall clear designated portions of the power line right-of-way, and keep them clear as necessary or as required by the Forest Officer in charge; shall trim all branches of trees in contact or near contact with the line; and on or adjacent to the right-of-way shall remove all dead snags and all trees leaning toward the line, which are deemed hazardous or might fall in contact with the line; and shall observe such other precautions against fire as may be required by the Forest Officer in charge....

The easement provides at Article 18, page 4:

> The Grantee shall do everything reasonably within its power and shall require its employees, contractors, and employees of contractors to do everything reasonably within their power, both independently and upon request of officers of the Forest Service, or other agents of the United States, to prevent and suppress fires on or near the lands to be occupied under this easement.  The Grantee shall pay the United States the suppression costs and damages resulting from fires caused by the construction or maintenance of the transmission line authorized by this easement.

///

///

///

///

///

1    30.  Under the easement, PG&E is liable to the United States

2    for damages to the lands or property of the United States caused

3    by operation or maintenance of the power lines and must make

4    arrangements with the appropriate department or agency to either

5    compensate or repair the damaged property.  The easement provides

6    at Article 13, page 3:

7            The Grantee shall be liable for injury to, or
             destruction of any buildings, bridges, roads,
8            trails, lands, or other property of the United
             States, occasioned by the construction, operation,
9            or maintenance of the project works, or of the
             works appurtenant or necessary thereto.
10           Arrangements to meet such liability, either by
             compensation for such injury or destruction,
11           reconstruction or repair of damaged property, or
             otherwise, shall be made with the appropriate
12           department or agency of the United States.

13           31.  The easement provides (Article 8, page 3) that PG&E is

14   required to:

15           [C]omply with the regulations of the Department of
             Agriculture and all Federal, State, county and
16           municipal laws, ordinances, or regulations which
             are applicable to the area or operations covered
17           by this easement and shall maintain the
             improvements and premises to standards of repair,
18           orderliness, neatness, sanitation, and safety
             acceptable to the forest officer in charge.

19

20   PG&E is further required under the easement (Article 27, page 6):

21           To abide by such reasonable regulation of the
             service rendered and to be rendered by the
22           Grantee, in respect to the furnishing or
             transmitting of power and of rates of payment
23           therefor, as may from time to time be prescribed
             by the State or by any duly constituted agency of
24           the Federal Government or of the State in which
             the service is rendered.

25           32.  Causing timber, trees, brush, or grass to burn except

26   as authorized by permit is prohibited by law including Title 36

27   Code of Federal Regulations § 261.5(c) and California Public

28

Resources Code § 4421. Ignition of the Fred's Fire was not authorized by permit or by the United States.

FIRST CLAIM FOR RELIEF

(Strict Liability Against PG&E Under the Easement)

33. Plaintiff re-alleges paragraphs 1 through 32, inclusive, as though fully and completely set forth here.

34. PG&E is liable to the United States under the easement including Article 13, page 3, for the destruction of property of the United States occasioned by the maintenance of the power lines.

35. PG&E is liable to the United States under the easement including Article 18, page 4, for the suppression costs and damages as a result of the Fred's Fire in an amount to be proved at trial.

SECOND CLAIM FOR RELIEF

(Against PG&E for Breach of the Easement)

36. Plaintiff re-alleges paragraphs 1 through 35, inclusive, as though fully and completely set forth here.

37. Title 36 Code of Federal Regulation § 261.10 prohibits the violation of any term or condition of a special-use authorization, contract, or approved operating plan.

38. PG&E breached its obligations to the United States under the easement, including, but not limited to the following:

    A. PG&E failed to do everything reasonably within its power and failed to require its contractors and their employees to do everything reasonably within their power to prevent and suppress the Fred's Fire (Article 18, p. 4).

1    B.   PG&E failed to pay the United States the
2         suppression costs and damages resulting from the
3         Fred's Fire (Article 18, p. 4).

4    C.   PG&E failed to make arrangements with the Forest
5         Service to either compensate the United States or
6         repair the damages caused by the Fred's Fire
7         (Article 13, p. 3).

8    D.   PG&E, and its employees, contractors, and
9         employees of contractors failed to comply with
10        Federal law and the laws of the State of
11        California by allowing a fire to be kindled and
12        escape on National Forest lands (Article 8, p. 3).

13   39.   The United States has incurred suppression costs and
14   damages resulting from the Fred's Fire for which PG&E is liable
15   under the provisions of the easement.

16              THIRD CLAIM FOR RELIEF

17   (Negligence Under California Civil Code §§ 1714 and 3333)
                    Against All Defendants
18

19   40.   The United States re-alleges paragraphs 1 through 39,
20   as though fully and completely set forth here.

21   41.   Defendants are responsible for all costs and damages
22   caused by their own negligence, under common law, and California
23   Civil Code §§ 1714 and 3333.

24   42.   Defendants were negligent in causing the Fred's Fire,
25   including but not limited to, igniting the Fred's Fire, felling a
26   tree so as to cause it to fall onto the power lines, failing to
27   suppress the fire they ignited, and failing to sufficiently train
28   and supervise tree trimming crew members.

1    43.  Defendants' negligence was the proximate cause of the

2    Fred's Fire.

3    44.  As a result of the negligence of Defendants, the United

4    States incurred damages in an amount to be proved at trial.  The

5    liability of Defendants is Joint and Several.

6                    FOURTH CLAIM FOR RELIEF

7            (Liability Under the Fire Liability Law,
      California Heath & Safety Code §§ 13001, 13007 – 13009.1,
8            California Civil Code §§ 3287 and 3288, and
            California Public Utilities Code § 2106)
9                    Against All Defendants

10   45.  The United States re-alleges paragraphs 1 through 44,

11   as though fully and completely set forth here.

12   46.  On or about October 13, 2004, defendants negligently

13   and/or in violation of law, ignited the Fred's Fire by setting

14   fire to or allowing a fire to be set to National Forest lands

15   within the Eldorado National Forest.

16   47.  The Fred's Fire destroyed property of the United States

17   and caused the United States to incur fire suppression costs.

18   Defendants are liable for all damages to the United States

19   resulting from the Fred's Fire, including without limitation, the

20   United States' fire suppression costs; damages for injury to

21   federal property; the United States' administrative,

22   investigative, accounting, and collection costs; and interest,

23   under the Fire Liability Law, California Health & Safety Code §§

24   13001, 13007, 13008, 13009, and 13009.1, California Civil Code §§

25   3287 and 3288, and California Public Utilities Code § 2106, in an

26   amount to be proved at trial.

27   ///

28   ///

<u>FIFTH CLAIM FOR RELIEF</u>

(Negligence and Negligence Per Se under
California Public Resources Code § 4293;
California Public Utilities Code § 451;
California Public Utilities Commission General Order No. 95,
Rules 12.2, 31.1, 35, 44.1, and 44.2;
Title 14 California Code Regulations § 1256; and
Title 29 Code of Federal Regulations § 1910.266)
Against All Defendants

48.   The United States re-alleges paragraphs 1 through 47, as though fully and completely set forth here.

49.   Defendants acted negligently, and also in violation of law, specifically in violation of California Public Resources Code § 4293, California Public Utilities Commission General Order 95, Rule 35, and Title 14 California Code of Regulations § 1256, because they failed to maintain a clearance of at least four feet between the power lines and surrounding vegetation, and they failed to properly fell the tree so as to remove the hazard. Instead Defendants felled the tree so that it fell on the power lines.

50.   Defendants acted negligently, and also in violation of law, specifically in violation of California Public Utilities Code § 451 and Public Utilities Commission General Order 95, Rules 12.2, 31.1, 44.1, and 44.2, which require that electrical supply systems be maintained to enable the furnishing of safe, proper, and adequate service.

51.   Defendants acted negligently, and also in violation of law, specifically in violation of Title 29 Code of Federal Regulations § 1910.266(h), by felling the tree in a manner to strike the power lines and by failing to make a backcut leaving sufficient "hinge wood" to hold the tree to the stump so that the

hinge would be able to guide the tree's fall in the intended direction.

52. The Defendants' negligent acts, omissions, and violations of law caused the Fred's Fire to ignite and proximately caused the damages sustained by the United States.

53. Plaintiff's damages resulted from an occurrence of the nature which the statutes and regulations were designed to prevent.

54. The United States is one of the classes of persons or entities for whose protection the statutes and regulations were adopted.

55. As a result of Defendants' negligence the United States incurred damages in an amount to be proved at trial.

<u>SIXTH CLAIM FOR RELIEF</u>

(Trespass by Fire)
Against All Defendants

56. The United States re-alleges paragraphs 1 through 55, as though fully and completely set forth here.

57. Defendants negligently, and/or in violation of law, allowed a fire ignited by them to escape to the surrounding National Forest System lands within the Eldorado National Forest.

58. As a result of Defendants' trespass by fire upon the surrounding National Forest System lands within the Eldorado National Forest, the United States has incurred damages in an amount to be proved at trial.

59. Plaintiff seeks double damages under California law including Civil Code § 3346 for this trespass by fire.

///

## SEVENTH CLAIM FOR RELIEF

(Interest and Penalties)
Against All Defendants

60. The United States re-alleges paragraphs 1 through 59, as though fully and completely set forth here.

61. The United States is entitled to recover interest and penalties under federal law, including without limitation, the Debt Collection Act, 31 U.S.C. § 3717.

WHEREFORE, the United States prays for judgment against Defendants as follows:

1. For payment of fire suppression costs and resource damages arising from the Fred's Fire including, but not limited to, the costs of fire suppression; the costs of rehabilitation and restoration of the burned areas; loss of timber, habitat and environmental values, facilities, and structures; plus interest, penalties, and double damages, in an amount to be determined at trial;

2. For recovery of the United States' investigative, accounting, collection and administrative costs arising from the Fred's Fire;

3. For other costs and fees; and

///

///

///

///

///

///

///

1    4.   For such other and further relief as the Court deems

2 just and proper, together with interest, costs, and disbursements

3 in this action.

4                            Respectfully submitted,

5 Dated: October 14, 2009.    LAWRENCE G. BROWN
                             United States Attorney
6

7

8                        By:  /s/ E. ROBERT WRIGHT
                             E. ROBERT WRIGHT
9                            Assistant U.S. Attorney

                             Attorneys for Plaintiff
10                           United States of America

11

12                    **DEMAND FOR JURY TRIAL**

13    Plaintiff hereby demands that this matter be tried before a

14 jury.

15                           Respectfully submitted,

16 Dated: October 14, 2009.    LAWRENCE G. BROWN
                             United States Attorney
17

18

19                       By:  /s/ E. ROBERT WRIGHT
                             E. ROBERT WRIGHT
20                           Assistant U.S. Attorney

21                           Attorneys for Plaintiff
                             United States of America

22

23

24

25

26

27

28

**EXHIBIT "1"**

FORM E 105
February 8, 1943

UNITED STATES DEPARTMENT OF AGRICULTURE
FOREST SERVICE

2750 (5600)
Pacific Gas & Electric Company
(Pacific House - Echo Lake Area)
10/16/59 - 50-Yr. Easement

(Designation)

EASEMENT FOR TRANSMISSION LINE ON NATIONAL FOREST LAND

### Pole line in Pacific House-Echo Lake Area

### Pacific Gas and Electric Company
(Name of Grantee)

*Pursuant to the provisions of the Act of March 4, 1911 (16 U.S.C. Section 523) I, _____ A. W. GREELEY
Chief of Forest Service, (hereinafter referred to as the Chief),

hereby grant to **Pacific Gas and Electric Company** (hereinafter referred
(Name of Grantee)
to as the Grantee), an easement for right-of-way for the construction,
operation and maintenance of a transmission line as hereinafter described
and located upon lands of the United States within a part of the
**Eldorado** National Forest in the State of **California**,
subject to the rules and regulations of the Secretary of Agriculture and
to the conditions, provisions and requirements set forth hereinafter and in
the Act, which Act is hereby referred to and incorporated as a part hereof.

Article 1. This easement is granted for a period of **fifty (50)** years
from the date hereof. The right of the Grantee and its transferees and
successors to use or occupy the lands covered by this easement, for the
purpose of maintaining the project works or otherwise, shall absolutely cease
at the end of the period hereof, unless a new easement shall be granted pur-
suant to then existing laws and regulations.

Article 2. The project covered by and subject to this easement consists of
the right-of-way and all structures, equipment or facilities used or useful
in the operation and maintenance of the transmission line as follows:

Width of right-of-way ................... **40.0** feet

Location of right-of-way
on National Forest Land in **(See pages 6a and 6b)**

_____
Sections, Subsections, Township, Range and Principal Meridian.

Total length within National Forest boundaries _____ miles
Total length on National Forest land ......... **41.4** miles

*Amended July 1945

-1-

which land and project works are more specifically shown and described by
certain exhibits which form a part of the application for easement and
which are designated and described as:

Exhibit "A", consisting of three sheets and entitled:

(Designate each exhibit by letter, title and date)

"Portion of Right of Way for pole line in Pacific House-Echo Lake

Area, Eldorado National Forest, Eldorado County, California", and

certified: 'This exhibit is a part of the application for a non-

primary transmission line easement under the Act of March 4, 1911,

made by the undersigned this 14th day of October, 1959'.

                        PACIFIC GAS AND ELECTRIC COMPANY

                        By J. S. Moulton
                        Vice President and Executive Engineer"

and in consideration of this easement and the benefits and advantages
accruing hereunder to the Grantee, it is expressly agreed by the Grantee that
the entire project, project area, and project works as above designated and
described shall be subject to all the terms and conditions hereof.

Article 3. The map and specifications designated as exhibits in Article 2
hereof are hereby made a part of this easement, and no substantial change
or alteration in the design, location, construction, voltage or capacity of
the line shall hereafter be made until such change shall have been approved
by the Chief, provided, however, that if the Grantee deems it necessary or
desirable that said exhibits or any of them be changed, there shall be
submitted for the approval of the Chief corrected, amended, supplemental, or
additional exhibits covering the proposed changes, which upon approval shall
become a part of this easement and shall supersede, in whole or in part,
such exhibits theretofore made a part of this easement, as may be specified
by the Chief.

Article 4. The Grantee shall begin the construction of the aforesaid line
or lines within      (*)        (days, months) from the date hereof,
shall thereafter prosecute such construction in good faith and with due dili-
gence, and shall complete the same and begin operation within     (*)
(days, months) from the date hereof. The periods specified for the
beginning and completion of construction will be extended only on the written
approval of the Chief, after a showing by the Grantee satisfactory to said
officer that such beginning or completion of construction has been prevented
by difficulties that could not reasonably have been foreseen or by other
special and peculiar cause beyond the control of the Grantee.

(*) constructed under Short-term Special Use Permits.

-2-

Amended July 1943

circumstances That ... pt when prevented by unav... ... accident or circum-
stances, the Grantee shall, after the completion of construction as required
in Article 4 hereof, operate in good faith and as continuously as may be
possible under prevailing market requirements, or users' demands, the line
or lines constructed, and, or, maintained in whole or in part under the
easement; that the Grantee shall neither discontinue the operation of said
line or lines, nor reduce the amount of power transmitted over the same, at
such a time or in such a manner as to reduce the output of electric energy
required by the consuming public, or to increase the market price therefor,
or to discriminate between consumers, or to prejudice the public interests;
and that if there is discontinuance of operation, or reduction in amount of
power transmitted for a continuous period of more than thirty (30) days or
for an aggregate period of more than ninety (90) days in any calendar year,
the Grantee shall notify the Regional Forester of the fact of such discon-
tinuance or reduction and of the reasons therefor.

Article 6. The Grantee shall pay to the Regional Fiscal Agent designated by
the Forest Officer for deposit to the credit of the Treasurer of the United
States, in consideration of this use, the sum of One dollar ($1.00) per acre
or fraction thereof of national forest land that is crossed by the line with
a minimum of Five dollars ($5.00) per mile or fraction thereof, annually in
advance for the line constructed hereunder. The charges for this use may be
readjusted whenever necessary to place this easement on a basis consistent
with the charge to other grantees for like privileges. A general readjust-
ment may be made at the end of five (5) years from the date of issuance of
easement and at the end of each five (5) year period thereafter.

Article 7. In case of change of address, the Grantee shall immediately
notify the Forest Supervisor.

Article 8. The grantee, in exercising the privileges granted by this ease-
ment, shall comply with the regulations of the Department of Agriculture and
all Federal, State, county and municipal laws, ordinances, or regulations
which are applicable to the area or operations covered by this easement and
shall maintain the improvements and premises to standards of repair, order-
liness, neatness, sanitation, and safety acceptable to the forest officer in
charge.

Article 9. This easement is subject to all valid claims.

Article 10. The Grantee, if engaged in business, shall conduct same in an
orderly manner and in accordance with all requirements of the laws of the
State of __California__ , as well as the laws of the United States.

Article 11. This easement confers no rights upon the Grantee to use this
right-of-way for purposes other than for the constructing, maintaining, and
operating a transmission line thereon.

Article 12. The Grantee shall pay the United States for any damage to its
property resulting from this use.

Article 13. The Grantee shall be liable for injury to, or destruction of any
buildings, bridges, roads, trails, lands, or other property of the United
States, occasioned by the construction, operation, or maintenance of the
project works, or of the works appurtenant or necessary thereto. Arrange-
ments to meet such liability, either by compensation for such injury or
destruction, reconstruction or repair of damaged property, or otherwise, shall
be made with the appropriate department or agency of the United States.

Article 14. The grantee shall allow officers and employees of the United
States free and unrestricted access in, through, and across the said project
and project works in the performance of their official duties, and shall
allow the Forest Service, without charge, to construct or permit to be con-
structed in, through, and across the said project, railroads, chutes, roads,
trails, conduits, and other means of transportation not inconsistent with the
enjoyment of said project by the Grantee for the purpose herein set forth.

Article 15.  No National Forest timber shall be cut or destroyed without first
obtaining a permit from the Forest Supervisor.

Article 16.  All National Forest timber, cut, injured, or destroyed in the con-
struction of the transmission line shall be paid for at current stumpage rates
applicable to the sale by the Forest Service or similar timber in the National
Forest; and all slash and debris resulting from the cutting or destruction of
such timber shall be disposed of as the Forest Officer may direct.

Article 17.  The Grantee shall clear designated portions of the power line
right-of-way, and keep them clear as necessary or as required by the Forest
Officer in charge; shall trim all branches of trees in contact or near
contact with the line; and on or adjacent to the right-of-way shall remove all
dead snags and all trees leaning toward the line, which are deemed hazardous
or might fall in contact with the line; and shall observe such other pre-
cautions against fire as may be required by the Forest Officer in charge; but
no burning of such waste material shall be done except with the prior
written consent of the Forest Officer in charge as to time and place.  The
clearing width shall be restricted to that necessary for safe transmission
unless the specific permission of the Forest Supervisor for a greater clearing
width is obtained.

Article 18.  The Grantee shall do everything reasonably within its power and
shall require its employees, contractors, and employees of contractors to do
everything reasonably within their power, both independently and upon request
of officers of the Forest Service, or other agents of the United States, to
prevent and suppress fires on or near the lands to be occupied under this
easement.  The Grantee shall pay the United States the suppression costs and
damages resulting from fires caused by the construction or maintenance of the
transmission line authorized by this easement.

Article 19.  The Grantee shall make provision, or shall bear the reasonable
cost (as determined by the Regional Forester) of making provision, for
avoiding inductive interference between any project transmission line or other
project work constructed, operated, or maintained under this easement, and
any radio installation, telephone line, or other communication facility
installed or constructed before construction of such project transmission line
or other project work, and owned, operated, or used by the Forest Service in
administering the National Forests and land under its jurisdiction.  The fore-
going provisions of this article shall also relate to any radio installation,
telephone line, or other communication facility installed or constructed by
the United States after construction of such project transmission line or
other project work.  None of the provisions of this article are intended to
relieve the Grantee from any responsibility or requirement which may be
imposed by other lawful authority for avoiding or eliminating inductive
interference.

-4-

Article 20. The transmission line shall be designed and constructed in accordance with accepted standards (National Electrical Safety Code) and specifications for transmission lines of similar voltage, capacity, and purpose. The Grantee shall place and maintain suitable structures and devices to reduce to a reasonable degree the liability of contact between its power line and telegraph, telephone, signal or other power lines heretofore constructed and not owned by the Grantee, and shall also place and maintain suitable structures and devices to reduce to a reasonable degree the liability of any structures or wires falling and obstructing traffic or endangering life on highways or roads, in a manner satisfactory to the Forest Service.

Article 21. To protect all Government and other telephone, telegraph, and power-transmission lines at crossings of and at all places in proximity to the Grantee's power-transmission line or lines in a workmanlike manner, according to standards of safety satisfactory to the Forest Service for construction, operation, and maintenance in such cases; and to maintain said power-transmission line or lines in such a manner as not to menace life or property.

Article 22. The scenic and esthetic values of the right-of-way and the adjacent land shall be protected as far as possible consistent with the authorized use, during construction, operation and maintenance of the line.

Article 23. That the line or lines to be constructed, maintained, and, or, operated under the easement shall not be owned, leased, trusteed, possessed, or controlled by any device or in any manner so that they form part of or in any way effect any combination in the form of an unlawful trust; and are not and will not be in unlawful restraint of trade with foreign nations or between two or more States or within any one State in the transmission of electric power.

Article 24. That in respect to the regulation by any competent public authority of the service to be rendered by the Grantee or of the price to be charged therefor, and in respect to any purchase or taking over of the properties or business of the Grantee, or any part thereof, by the United States or by any State within which such properties are situated or business carried on in whole or in part, or by any municipal corporation of such State, no value whatsoever shall at any time be assigned to or claimed for the easement, or for the occupancy or use of National Forest lands granted thereunder, nor shall the approval of such occupancy and use ever be estimated or considered as property upon which the Grantee shall be entitled to earn or receive any return, income, price, or compensation whatsoever.

Article 25. That the books and records of the Grantee, insofar as they contain information concerning the power-transmission line or lines under easement or the power business conducted in connection therewith, shall be open at all times to the inspection and examination of the Chief or other officer or agency of the United States duly authorized to make such inspection and examination.

Article 26. To sell power to the United States when requested at as low a rate as is given to any other purchaser for a like use at the same time and under similar conditions, if the Grantee can furnish the same to the United States without diminishing the quantity of power sold before such

request to any other customer by a binding contract of sale: Provided,
That nothing in this article shall be construed to require the Grantee to
increase its permanent works or to install additional generating machinery.

Article 27. To abide by such reasonable regulation of the service rendered
and to be rendered by the Grantee, in respect to the furnishing or trans-
mitting of power and of rates of payment therefor, as may from time to time
be prescribed by the State or by any duly constituted agency of the Federal
Government or of the State in which the service is rendered.

Article 28. The transmission line or lines authorized by this easement, or
any part thereof, whether constructed or unconstructed, may be abandoned or
surrendered by the Grantee upon the written approval of the Chief, after a
finding by the Forest Officer that such abandonment or surrender will not be
contrary to the public interest, and after the fulfillment by the Grantee of
such obligation under this easement as the Chief may prescribe in respect to
rental payment or otherwise, and if the transmission line authorized by this
easement has been constructed in whole or in part, then upon such conditions
with respect to the disposition of the transmission line as may be pre-
scribed by the Chief. If the abandonment, termination, or revocation of
this easement is approved and in the absence of a requirement to the
contrary, the Grantee may, within a period of twelve months, remove all
structures which have been placed on the premises by him, except where the
material was furnished by the Forest Service, but upon failure to remove the
structures within that period they shall become the property of the United
States.

Article 29. That upon breach by the Grantee of any of the terms or conditions
set forth in the easement or in the Regulations for carrying out the pro-
visions of the Act of March 4, 1911, the United States may enforce appro-
priate remedy therefor by injunction, action for damages, or otherwise; and if
any such breach shall be continued or repeated after thirty (30) days' notice
thereof, given to the Grantee by the Chief, the easement granted, together
with all rights thereunder and all rental charges and other moneys paid
thereon, may be forfeited to the United States by a suit for that purpose in
any court of competent jurisdiction.

Article 30. That the Grantee will not voluntarily assign or transfer to any
person or corporation whatsoever the right-of-way granted, except with the
approval in writing first obtained from the Chief, and upon terms and condi-
tions prescribed in said written approval by said Chief: Provided, That a
transfer by mortgage or trust deed or judicial sales made thereunder or
under tax sales shall not be deemed a voluntary transfer within the meaning
of this article.

Article 31. If the Grantee shall cause or suffer essential project property
to be removed or destroyed or to become unfit for use, without replacement,
or shall abandon or discontinue good faith operation of the project for a
period of more than 2 years, or refuse or neglect to comply with the terms
of the easement and the regulations, the Chief will deem it to be the intent
of the Grantee to surrender the easement, and after 30 days' written notice
may, in his discretion declare the easement forfeited or annulled.

MT. DIABLO BASE AND MERIDIAN

T. 9 N., R. 13 E.
Section 3, Lot 4 and Lot 6;
Section 4, NW¼SE¼, NE¼SW¼;

T. 10 N., R. 12 E.
Section 2, NE¼SW¼;
Section 26, SW¼N E¼, SE¼SE¼;

T. 10 N., R. 13 E.
Section 16, NE¼NW¼;
Section 20, NE¼NE¼;
Section 21, NW¼, S½;
Section 27, A portion of W½SW¼;
Section 28, NE¼, NW¼SE¼;
Section 34, A portion of SW¼NW¼;

T. 11 N., R. 13 E.
Section 23, Lots 4, 5, 6, 8 and 9;
Section 24, Lots 8 and 9;
Section 26, Lots 1 and 2;
Section 27, Lot 9;
Section 32, NE¼NW¼;
Section 33, S½NW¼;
Section 34, Lots 2 and 4;
Section 35, Lot 1, and NW¼NW¼;

T. 11 N., R. 14 E.
Section 19, Lot 4;
Section 23, S½;
Section 26, S½NE¼, NE¼SW¼;
Section 27, SE¼NE¼, NE¼NW¼;
Section 28, N½;
Section 29, NE¼, W½S½, and a portion E½SW¼;
Section 30, SE¼NE¼;
Section 35, N½NE¼;

T. 11 N., R. 15 E.
Section 22, SW¼SW¼, SW¼SE¼;
Section 23, Lot 11 and Lot 12;
Section 26, Lots 5, 6 and 7;
Section 27, E½NW¼, SW¼NE¼, NE¼;
Section 29, SW¼SW¼, NW¼SE¼;
Section 30, Lot 4, SE¼SW¼, S½SE¼;

T. 11 N., R. 16 E.
    Section 19, S½SE¼;
    Section 20, SW¼, S½SE¼;
    Section 21, S½;
    Section 22, N½SW¼, S½N½;
    Section 23, S½N½;
    Section 25, S½W¼, N½SE¼;
    Section 29, NW¼;
    Section 30, Lots 9, 10 and 11;

T. 11 N., R. 17 E.
    Section 8, SE¼SW¼, SE¼;
    Section 10, S½, NW¼NE¼;
    Section 11, N½N½;
    Section 14, NW¼NE¼;
    Section 15, N½N½;
    Section 16, W½;
    Section 17, E½, NE¼SW¼;
    Section 18, E½E½;
    Section 19, W½, NW¼NE¼;

T. 11 N., R. 18 E.
    Section 6, NW¼, W½SW¼, SE¼SW¼, SE¼;
    Section 7, E½, NE¼NW¼;

In witness whereof, I hereunto set my hand this ___12th___ day of

___December,___ , 19_59_.


___A. W. GREELEY___
Chief of the Forest Service


(Seal)


*************


In Testimony of Acceptance of all the provisions and conditions of the Act

of March 4, 1911, and the regulations thereunder, and the further conditions

imposed in this easement, the Grantee, this ___1st___ day of

___February___ , 19_60_, has caused its corporation name to be signed

Vice President & Executive Engineer

hereto by_____ , its ___Vice President~~President~~___ , and its corporate seal

to be affixed hereto and attested by _____ ~~the~~

Secretary, pursuant to a resolution of its

Executive Committee of the

board of directors duly adopted on the ___1st___ day of ___July___ ,

19_47_, a certified copy of the record of which is attached hereto.


___Pacific Gas & Electric Co.___
(Grantee)

By ___J. D. Moulton___
(Title)
Its Vice President & Executive Engineer


Attest:

___E. F. Nowka~~t~~___
(Secretary)


-7-